PEOPLE v. DAY.

INDICTMENT AND INFORMATION—EMBEZZLEMENT—VARIANCE—EVI-
     DENCE. .

     An information under section 15315, 3 Comp. Laws 1915,
        charging that defendant embezzled money belonging to
        another, the vendee in a land contract, was not supported
        by evidence showing that said money was received by de-
        fendant as the executor of the estate of the vendor, de-
        ceased, in said contract, although at the time the informa-
        tion was drawn the contract had been set aside by the
        court and a decree entered for the repayment of the money
        by the estate.

Exceptions before judgment from the recorder's
court of Detroit; Connolly, J. Submitted January 17,
1918. (Docket No. 192.) Decided March 27, 1918.

Ebenezer Day was convicted of embezzlement. Re-
versed and respondent discharged.

*John Galloway* and *Henry M. Du Bois*, for appellant.

*Charles H. Jasnowski*, Prosecuting Attorney, and
*Robert T. Speed*, Assistant Prosecuting Attorney, for
the people.

OSTRANDER, C. J. The information alleges that
respondent did receive and come into the possession of
$520, lawful money, of the personal property, goods
and chattels of Edwin Becker, and afterwards, and
while the said goods and chattels were in his posses-
sion, he feloniously and fraudulently embezzled and
converted the same to his own use, and thereby he the
said property did feloniously steal, take and carry
away. There is also a count charging larceny of goods
and chattels of the value of $520. The information
was filed July 5, 1916. Respondent was convicted by

the verdict of a jury and reviews the proceeding upon exceptions before sentence.

There is no "statement of facts" in the brief for respondent, although various facts are stated, but it is said that the respondent is in the same situation here as he was in a former case reviewed by this court and reported 185 Mich. 68; that there is involved the same subject-matter and the same testimony. The brief in no respect complies with the rule of this court.

The brief for the people contains the statement:

"The case was before this court at the March term, 1915, and is reported in 185 Michigan, page 68. By reference to that case it will be seen that respondent was convicted of the charge of embezzlement, growing out of the same state of facts appearing in the record now before the court. It was there held that the respondent, who was acting in the capacity of an executor, should not have been charged under section 11591, of the Compiled Laws of 1897 (3 Comp. Laws 1915, § 15336), which relates to the conversion by agents and clerks of moneys entrusted to them, it being intimated that if any offense was committed, it should have been prosecuted under section 11610 (3 Comp. Laws 1915, § 15375), relating to embezzlement by executors and administrators."

A reference to *People* v. *Day*, 185 Mich. 68, discovers the fact that in that case respondent was charged with being the agent and clerk of Edwin Becker, a fact which the testimony absolutely disproved, and with receiving, while he was such clerk and agent, by virtue of his said employment, money belonging to Becker, which money he converted to his own use. The information in the case now before us is filed, it is assumed, under 3 Comp. Laws 1915, § 15315, which reads:

"If any person to whom any money, goods, or other property which may be the subject of larceny, shall have been delivered, shall embezzle or fraudulently convert to his own use, or shall secrete with the intent

to embezzle, or fraudulently use such goods, money, or other property, or any part thereof, he shall be deemed by so doing to have committed the crime of larceny."

An examination of the record, which is made because the liberty of respondent is involved, discloses the following facts, not disputed: Alonzo F. Anscomb and his wife, Anna Anscomb, were owners of a farm and a house and lot, all of the property situated in Wayne county. (In what proportions the property was owned by each does not appear; nor what the estate of the wife in the property was.) They contracted to sell the farm to one Edwin Becker March 9, 1907, for $6,000, some, at least, of the payments being deferred and by agreement to be made from time to time. To February, 1911, when Mrs. Anscomb died, payments were made on the contract to the vendors. By her will, respondent was named the executor of her estate and qualified as executor. After her death, one payment of $540 was made to some one other than respondent, and thereafter payments were made to him. He executed receipts, signing the same as "Executor of Anna M. Anscomb estate," and he so gave a receipt for $520 paid to him April 8, 1912, "to apply on land contract on the Anscomb farm." This is the sum of money respondent is said to have stolen. Other sums paid to him on this contract were $530 and $510. The Anscombs also deeded the house and lot to Becker and of the purchase price he paid to respondent $1,570. Some time after the death of his wife, Mr. Anscomb was declared to be an incompetent, and one Boden, a brother-in-law, was appointed guardian. The guardian instituted an action to set aside these sales, and respondent was made a party defendant. Under date February 11, 1913, a decree was made in that action setting aside the sales, determining that Becker had paid $4,259.36, which ought to be repaid to him, and containing the provision that of

this sum $3,854.90 should be paid to Becker by respondent. This was the sum, with interest, which it was found had been paid by Becker to respondent. Five days before the decree was signed, respondent filed in probate court his account as executor. In it he admitted total receipts of $4,825.91, claimed his disbursements and fees were $2,675.82, and stated the balance due the estate to be $2,150.09. On March 17, 1913, the probate court made an order in the matter of the estate of Anna M. Anscomb, deceased, which disallows most of the sums claimed to have been disbursed, which states no sum as due from the executor to the estate, and contains the provision:

"Executor is not charged with the various items of cash received upon Becker land contract, deed and bill of sale, said money not being a part of the estate of Anna M. Anscomb."

Respondent, a witness in his own behalf, upon the trial of this case, testified that he had received a total of $3,130 from Becker, that the balance he contends he ought to account for is $2,150, and that he would pay that amount to Becker when his attorney told him to do so. He testified further that he had used some of the money in his own business, and it appears that he deposited some or all of it to his own credit, and not in a special account.

I have examined respondent's exceptions. I do not find that he was prevented from presenting the facts upon which his theory depends. His contention was stated to the court in the absence of the jury, and was overruled. Whether this ruling was correct is, upon this record, the question presented for decision. The statement and motion made for him was:

"At this stage of the trial, if your honor please, the people having rested, and in consideration of the evidence therein adduced, it is clearly apparent that the money the respondent is charged with embezzling

came to his possession and control as executor of the estate of Anna M. Anscomb, deceased. Such money being one of the instalment payments under a land contract which came into the respondent's control was part of her estate in personalty,—a contract executed by Mrs. Anscomb for the sale of her farm to Mr. Becker, the complaining witness, some four or five years before she died,—on the stipulated payments, as therein provided, till it matured, as it did, during Mr. Day's administration of her estate. The money he is charged with embezzling is $520, one of the instalments collected by Mr. Day on that contract; collected by him in his official capacity, precisely as he had collected all the others since Mrs. Anscomb's decease, including, notably the instalment of $540 of which he was also charged with embezzling under 3 Comp. Laws, § 11591, and of which charge he was held not to be guilty by the Supreme Court, because not charged under section 11610, relating to executors, administrators, and others controlling money coming into their possession in a trust capacity.

"Now in this trial the respondent is charged practically under the same section as in his former trial, the only difference being the omitting of the word agent, clerk, apprentice of the complaining witness, and the statement he was not under the age of sixteen years thus leaving the information as to its sufficiency weaker than it was in his former trial. Therefore we here move for the respondent's discharge at this time.

"Further, we here also move, under the evidence adduced at this time in the trial, clearly disclosing that the respondent obtained possession and control of the items of money here charged against him as an item in the aggregate of the entire money he was entitled to and did collect, and had in his possession in his capacity as executor, did so in every respect identically as with his collections of the preceding instalments collected on said contract, viz., the $540 as charged against him in his former trial resulting in his acquittal, entitles him to be discharged on his plea now here presented of his former jeopardy."

This may be fairly treated as presenting the point that the evidence does not support the charge made in

the information. The statute under which the information is filed reaches the person who, while holding, having possession lawfully of, the money or goods of another, converts the property to his own use. It is evident that no money belonging to Mr. Becker was ever delivered to respondent within the meaning of the statute, and he never, being possessed of Becker's money, converted it. It was not paid to or received by respondent as Becker's money, at all, but was paid and received in discharge of a debt which Becker owed, for which payment Becker received the desired and proper credit. In the hands of respondent, the money was treated as a part of the estate of his decedent, to be accounted for by him as executor; precisely the situation contemplated when the money was paid to him. Becker not only had no title to the money he paid but he had no right to demand repayment of it and could not have enforced repayment. It was not until the court, at the instance of the other party to the contract, set aside the contract upon which the payment had been made and determined that in equity Becker ought to have his money back, with interest, that any right to demand it arose. Argument might be extended and illustrations multiplied without adding to the force of what has been said. The trial court should have directed an acquittal.

The conviction must be set aside and the respondent discharged.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.