PEOPLE *v.* THRINE.

1. CRIMINAL LAW—COMPLAINT—SUFFICIENCY — ORDINANCES — AL-
LEGATION OF PLACE OF OFFENSE — JURISDICTION — JUSTICES OF
PEACE.

> A complaint charging "that heretofore, to wit, on the 1st day of September, A. D. 1921, at the city of Battle Creek, in the county aforesaid, and for three months preceding that day, at the city of Battle Creek in said county, one N. was a disorderly person, by keeping a house resorted to for the purpose of prostitution and lewdness," in violation of a city ordinance, *held*, not open to the objection that it did not give the justice jurisdiction in that it did not allege that the house was located in Battle Creek.

2. SAME—RIGHT OF PROSECUTING OFFICERS TO DETERMINE APPLIC-
ABLE STATUTE.

> Prosecuting officers have the right to use their discretion in determining under which of applicable statutes or ordinances a prosecution shall be instituted.

3. PROSTITUTES—DISORDERLY PERSONS—STATUTES.

Prostitutes are defined as disorderly persons by statute (2 Comp. Laws 1915, § 7774).

4. DISORDERLY HOUSES—PROSTITUTES—ORDINANCES—APPLICABILITY.

Proof that defendant kept a bawdy house in the city of Battle Creek justified her prosecution under an ordinance of that city entitled "An ordinance to prevent and suppress disorderly houses and assemblages and to punish disorderly persons," since a prostitute is a disorderly person; although she might have been prosecuted under another ordinance of said city entitled "An ordinance to suppress and prevent houses of ill-fame and to punish the keepers and inmates thereof."

5. CRIMINAL LAW—TRIAL—INSTRUCTIONS AS TO FAILURE OF DEFENDANT TO TAKE STAND NOT ERROR—PRESUMPTION OF GUILT.

In a prosecution under a city ordinance as a disorderly person, where defendant was not in court, it was not error for the trial judge, of his own motion, to instruct the jury that the presence in court of defendant was not necessary, and the fact that she had not taken the stand in her own behalf did not raise any presumption of guilt against her.

Exceptions before judgment from Calhoun; North (Walter H.), J. Submitted April 14, 1922. (Docket No. 132.) Decided June 5, 1922.

Nettie Thrine was convicted of violating a city ordinance. Affirmed.

*James M. Powers* (*Joseph L. Hooper*, of counsel), for appellant.

*John A. Wagner*, City Attorney, for the people.

FELLOWS, C. J. On September 1, 1921, defendant was arrested for violating an ordinance of the city of Battle Creek. She pleaded guilty and was sentenced by the justice of the peace to pay a fine of $50 and costs, and to be confined in the county jail for a period of 30 days. The following day she appealed from the

judgment of the justice to the circuit court of Calhoun county where she was permitted to withdraw her plea of guilty and enter one of not guilty. In the circuit court the proceedings were assailed on numerous grounds. A trial there resulted in her conviction, and she brings the case here relying upon some, but not all, of the objections there urged. We shall consider those relied upon in their order.

1. The complaint contained the following language:

"That heretofore, to-wit, on the 1st day of September, A. D. 1921, at the city of Battle Creek, in the county aforesaid, and for three months preceding that day at the city of Battle Creek in said county, one Nettie Prine was a disorderly person, by keeping a house resorted to for the purpose of prostitution and lewdness." * * *

It is first urged that this complaint did not give the justice jurisdiction in that it did not allege that the offense was committed in the city of Battle Creek, the specific point being that it is not alleged that the house was located in Battle Creek. We think this is too narrow a construction of the language used. Adding to the words "keeping a house" the words "at the city of Battle Creek," or preceding them with the words "then and there" was unnecessary. In the case of *State* v. *Harris,* 106 N. C. 682 (11 S. E. 377), it was held (we quote from the syllabus):

"When each count in an indictment alleges in the beginning that 'on the 1st day of January, 1888, in said county of Granville,' the defendant, etc., this applies to the whole count, and is a sufficient allegation that the crime charged in said count was committed in the county of Granville, and it is needless to repeat it at the beginning of each sentence or paragraph in the same count."

In Joyce on Indictments, § 318, it is said:

"It has been said that if taking the indictment as a

218 Mich.—44.

whole, a day is specified as to an issuable averment, the objection will not be fatal because the day is not repeated with every issuable fact; and that if time and place are stated in the beginning of a sentence and may be grammatically read as applying to facts subsequently averred they need not be again averred or referred to by the use of the words 'then and there.' So the omission of the words 'then and there' in a clause describing the uses of a tenement which it is charged is maintained as a nuisance has been held to be of no importance."

There is no merit in this objection.

2. The city of Battle Creek has an ordinance, approved August 21, 1883, entitled:

"An ordinance to suppress and prevent houses of ill-fame and to punish the keepers and inmates thereof."

It also has an ordinance, approved March 12, 1900, and later amended, entitled:

"An ordinance to prevent and suppress disorderly houses and assemblages and to punish disorderly persons."

Section 1 of this ordinance is as follows:

"Be it ordained by the common council of the city of Battle Creek, that it shall not be lawful for any person knowingly to permit or suffer any house, building or place owned or occupied by him to be a resort of noisy, boisterous or disorderly persons, nor permit or suffer to remain therein any noisy, boisterous or disorderly person."

Defendant was prosecuted under this ordinance. The proof showed beyond question that she kept a bawdy house at 15 Short street in the city of Battle Creek, that she kept prostitutes who there plied their trade. While not claiming that defendant could not be convicted under the ordinance of 1883, it is strenuously urged by counsel that she could not be convicted under the ordinance of 1900. This court has recognized the right of the prosecuting officers to use their

discretion in determining under which of applicable statutes the prosecution shall be instituted. *People* v. *Mire,* 173 Mich. 357.

Under the terms of section 1 of the ordinance of 1900 the occupant of a house who knowingly permits "disorderly persons" to resort there, or permits or suffers "disorderly persons" to remain there violates its provisions.     Prostitutes are disorderly persons. They are so defined by our statute.     2 Comp. Laws 1915, § 7774.     The New York court in *People* v. *Miller,* 38 Hun (N. Y.), 82, tersely said:

"The keeper of a house of ill-fame is a disorderly person and his conduct tends to disturb the peace of the community where the brothel is located and it did not need legislation to declare him such."

In *Cheek* v. *Commonwealth,* 79 Ky. 359, it was said:

"A disorderly house, in its restricted sense, is a house in which people abide, or to which they resort, disturbing the repose of the neighborhood; but in its more enlarged sense it includes bawdy-houses, common gaming-houses, and places of like character, to which people promiscuously resort for purposes injurious to the public morals, or health, or convenience, or safety. Nor is it essential that there be any disorder or disturbance in the sense that it disturbs the public peace or the quiet of the neighborhood.     It is enough that the acts there done are contrary to law and subversive of public morals, and the result is the same whether the unlawful acts are denounced by the common law or by statute."

In *State* v. *McGregor,* 41 N. H. 407, it was said:

"The nuisance consists in drawing together dissolute persons engaged in unlawful and injurious practices, thereby endangering the public peace and corrupting good morals.     The gist of the offence is the keeping or managing such a house to the public detriment, and, under a general charge, particular instances may be proved.     That notoriously reputed prostitutes and libertines were in the habit of frequenting the house

during the time laid in the indictment, had a direct tendency to support the allegations of the indictment and establish the guilt of the defendant, if the house were managed or controlled by him at the time."

See, also, *State* v. *Williams,* 30 N. J. Law, 102; *Price* v. *State,* 96 Ala. 1 (11 South. 128). The court did not err in holding that the prosecution could be maintained under the ordinance of 1900.

3. The defendant did not take the stand. The trial judge of his own motion gave the jury the following instruction:

"In this case the defendant has not taken the witness stand in her own behalf. In fact, it is obvious to you, gentlemen, that she is not even here in court. Her presence here in court is not necessary, it being a trial for an alleged misdemeanor, and so far as her not having taken the witness stand as a witness in her own behalf, that does not raise any presumption of guilt against her. It is a right any defendant may exercise under our Constitution and does not in any way raise a presumption of guilt. You should pass upon her guilt or innocence in the light of the testimony given here in open court and decide it under the rules of law as the court has stated them to you."

The giving of this instruction *sua sponte* is assigned as error. This question is foreclosed in this jurisdiction. *People* v. *Provost,* 144 Mich. 17, followed in *People* v. *Murphy,* 145 Mich. 524. In the *Provost Case* the authorities from other jurisdictions were fully reviewed and the propriety of such instructions by the court of its own motion sustained.

The conviction will be affirmed.

WIEST, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.